Good morning. May it please the Court. I'm Kayla Owens on behalf of the claimant, Kassir, and I'm joined by co-counsel Elon Pollack. I'd like to reserve five minutes for rebuttal. The issue before the Court today is whether the District Court abused its discretion when it ruled that Kassir did not substantially prevail for purposes of receiving a fee award under CAFRA. The District Court did abuse its discretion because its ruling was based on an inaccurate view of the law concerning the amount of relief that's necessary for a party to qualify for a fee award under CAFRA. When looking at the terms of the stipulated settlement agreement, the terms were far more favorable to Kassir. Kassir got its property back, and it paid a nominal amount to do so. The sole relief that the government sought in its forfeiture complaint was to forfeit the property, and it got nothing. The government argues in its brief that it achieved its main goal because the merchandise was exported from the United States. But the government seized this property for alleged violation of 21 U.S.C. 863, and under the terms of that statute, it's illegal to import or export drug paraphernalia. While there was never a judicial determination as to whether this merchandise was in fact drug paraphernalia, obviously the government believes that it was. So it should have been in its interest to prevent the importation or exportation of the merchandise. And the only way it could have achieved that goal was through forfeiture, which it didn't. Let's face it, counsel. If the rule is legitimate seizures of property plausibly subject to forfeiture, Second Circuit, you guys lose. And if the rule is a straight analysis of who's the prevailing party, you win. So tell me about why you think the plausibly subject to forfeiture loss that the Second Circuit, in dicta, talked about should not be adopted by the Ninth Circuit. Well, I don't believe it should be adopted by the Ninth Circuit because I'm not aware, based on my review of the congressional record, I'm not aware of any statements that that was necessarily the purpose. And that that should prevent attorney's fees. Unlike EAJ, there's no substantial justification exception under CAFRA, which means that the government could have had reasonable cause. And if a claimant substantially prevails, they can still receive attorney's fees under the statute. What's the standard overview here? The standard overview is abuse of discretion. So if the court's ruling was based on an inaccurate view of the law, the decision should be reviewed de novo, which is what we believe is the case here. And you believe that the district judge made a mistake when he said there was not sufficient relief on the merits of the claim because sufficiency of the relief is not part of your burden there. It's just a question of whether it was a judicially enforced agreement that gave you a change in circumstances or a change in position, which it did. Well, there was clearly a material alteration, and it was judicially sanctioned. But the courts have looked to the whether or not a party has received relief. Our position is that based on the standards under the Ninth Circuit, the relief here was sufficient. It was more than sufficient. Well, I'm trying to figure out how you prevailed here. And I think the statute requires substantial prevail. But I think sometimes it's treated the same. But you wanted or your client wanted to import your goods. You were not able to do that, and you also had to pay a substantial amount of money. Your goal was to import the goods for distribution here. And not only were you not able to do that, you weren't able to do it with any continuous country. How did you prevail? We prevailed because our client got his property back. Our client's main goal was to get his property back so that he could sell it. He's an importer, exporter, and distributor of merchandise in the U.S. and abroad. Well, who gets to determine what the main goal was, though? I mean, because it seems like the main goal was to distribute it, and you couldn't. And you couldn't distribute it not only here in the United States, the country, as I stated before, and then you had to pay a substantial fine. I'm trying to figure out how you prevail. Well, the Ninth Circuit has said that if a party succeeds on any significant issue in litigation which achieves some of the benefit it sought, then the party has crossed the threshold to a fee award of some kind. So the relief sought doesn't necessarily have to be the relief obtained, but it must require the defendant to do something they otherwise wouldn't be required to do. Here, the government was required to return the property. With respect to noncontiguous country, we enter settlement agreements with the government all the time. That's standard language. The government's concern is that if goods are allowed to go to Mexico or Canada, they have an easy way of ending up back in the United States. I mentioned earlier the difference in this language from other statutes that it says substantially prevailed. Do you have any cases dealing with that statutory language and what they indicate? In the synagogue case, the Ninth Circuit interpreted substantially prevails in accordance with the prevailing party definition adopted in Buckhannon, which requires a material alteration in legal relationship with the parties, which we have here. The case was dismissed with prejudice, so the government couldn't bring another forfeiture action, and the government was required to return the goods, something it otherwise wouldn't have had to do. It was judicially sanctioned because the court retained jurisdiction to enforce the terms of the settlement agreement, and Qasir received sufficient relief. It got its goods back. Well, what do we compare, I guess, the settlement to? Because you focus on the settlement, and I'm curious whether we focus on the settlement or do we compare the settlement to the world before the litigation began and Qasir had a clean title to the merchandise. If that is the comparison, doesn't the settlement restrict Mr. Qasir's property rights or the Qasir's property rights? Well, in this case, Qasir wasn't importing this merchandise for the company's use or any individual's personal use. It was importing the merchandise, and it was going to go straight to a customer for sale. So the intention was never for it to retain possession of the property. So in that sense, its rights weren't restricted because what ended up happening is it got its property back, and it sold it to a customer abroad instead. There could be instances where exportation would not be sufficient relief, but in this case, because their ultimate goal was to sell the merchandise, they achieved that goal. If you were the plaintiff and you were suing the federal government saying that they were singling out your product unfairly and affecting your rights and this were the settlement agreement, you would not be the prevailing party because you will not have succeeded in getting the material into this country. But you're the defendant here sued by the government in a forfeiture action where the plaintiff sought to forfeit your property and did not forfeit the property. Correct. You got it back. That makes you the prevailing party. That's your argument. Yes. Yes. Casir did pay $12,000 towards storage charges as part of the settlement agreement. This represented less than half of the total amount of the storage charges and was really de minimis in comparison with the total amount of the storage charges and the value of the property. Also, as this court noted in the Barrios case, the fact that the plaintiff in that case accepted a lower amount in damages and didn't get the broad policy change that he sought, confirmed only that he acted reasonably to bring the litigation to an end, which is what Casir did here. The government agreed to return its property, and the conditions to that return were de minimis in Casir's mind. It made sense to enter that settlement. Regardless of the conditions, the government was still required to return the property to Casir. And the government actually thought they had included each party responsible for their own costs and fees, but they didn't. Aren't you afraid that you're going to get the wrath of the government going forward now that you tweaked them on this thing? Well, the bottom line is, in this case, there wasn't that feeling. We insisted that we have language that we would be able to apply for fees, and we certainly can't force the government to do anything it doesn't want to do. They agreed to sign the settlement agreement with that language, but that may be a result going forward. I keep coming back. Wasn't the goal of the United States for this not to enter the country? You think they wanted to confiscate it and that was their goal? I mean, and keep it for what? I mean, it just seems like that's additional, you know, that happens after they make sure it doesn't come into the country. The truth is, if the government's goal really was just to keep the goods out of the country, when our client tried to import the goods in 2006, Customs could have rejected the entry and excluded the merchandise, and we wouldn't be here this many years later. Also, the government seized this merchandise for violation, alleged violation, 21 U.S.C. 863. Under that statute, it's illegal to import or export drug paraphernalia. So if they really believe that this is drug paraphernalia, which they clearly do, they said so in their answering brief, their goal is to enforce the law, and the law says that this merchandise shouldn't have been exported either if it was drug paraphernalia. All right. How much time did you want to save? Five minutes. Five minutes? We'll grab it. Okay. Thank you. Goodbye. Good morning. May it please the Court, I am AUSA Stephen Arwell for the government. There are three reasons why the claimant's arguments fail here. The first is that under the authority in St. John's Organic Farm, their argument completely ignores the rule that the Court is required to look at whether the settlement served the goals of the underlying statute under which the case was brought. Secondly, it takes the legally untenable position that the recovery of any relief whatsoever is enough to satisfy the prevailing party standard. Well, that's just hardly any relief whatsoever. They got their property back. Well, they got their property back. That's certainly true. The cases have talked about what the goals of the parties are, and there's this question about when you determine what the goals of the parties are. There's no question here that the goal of Casir here was to import this merchandise for sale. They admit that. Well, in the suit, your goal was to forfeit. That was a forfeiture action. The government's goal, this case was not brought. Counsel stated that this case was brought pursuant to 21 U.S.C. 863. It was not. The case was brought under 19 U.S.C. 1545a, which is a customs provision that prohibits and restricts the entry of merchandise contrary to law. Contrary to law, dealing with health and safety and conservation are the main categories. It's a customs provision that was brought in. Could you have done what counsel said? Could you just have excluded it when it was brought in? Perhaps. Perhaps it could have been excluded. That's like that. That was certainly one option that the government had, but the government also has the option to seize and forfeit it. And the ---- Okay. So your object was not to exclude it. It was to forfeit it. Seize it and destroy it. Well, no. I disagree, Your Honor. The government's goal here is to stop under 1595a is to keep this property from entering the stream of commerce in the United States. That's the purpose of the statute. Because it's the Federal government, you do it in the most cumbersome and expensive way possible. Sure, that's true. I think that there are ---- And I'll tell you why. There are ---- This isn't the only shipment of love roses that has been attempted to be imported into the United States. We see this sort of thing all the time. There is an incentive on the part of the government, particularly with respect to certain importers, to seize these things and forfeit them rather than just exclude them and say ---- Isn't that the case? Isn't this the case where you tried to seize and forfeit it? We did seize it. We attempted to forfeit it. We made ---- You know, counsel noted that this Court in Barrios placed some value on the fact that the plaintiff in that case had entered into a settlement with the defendant in an attempt to lessen the flood of litigation, to not force every case to go to trial. That's what the government did here. The government said, look, our goal here is to keep this stuff from entering the stream of commerce. This is drug paraphernalia that we don't want being sold in the United States. We just said a little while ago, if I understood your answer, yes, we could have just excluded it, but that's not what we wanted to do. We wanted to forfeit it. Well, I'm not sure that was one thing. I think that's the one thing we could have done. I have to say, Your Honor, I'm not positive that it could have simply been excluded. It doesn't matter whether you're positive. Your answer was basically that wouldn't have solved our problem. What we wanted to do was to forfeit it. And you want to send a message to the company to stop importing it because it's drug paraphernalia, and you may well be right. But, you know, if you file the lawsuit, now, this is very rare to have a defendant as the prevailing party. Almost all the cases have plaintiffs seeking some relief and getting it. You were the plaintiff. You sought some relief, and you didn't get it. Isn't that the key? I don't agree that we didn't get it, Your Honor. That's the point I'm trying to make. While the statute allows for forfeiture of the merchandise, that's not a foregone conclusion. The property isn't forfeited unless the government wins the case. You know, one of the important factors to be determined here is whether the party against whom fees are sought was required to do something that it otherwise was not required to do. When you look at all the cases determining that, Carbonell, for example, is a great example, because there the government had a present right to deport the plaintiff in that case and agreed not to so that the immigration proceedings could go forward. Had the government deported the plaintiff in that case, those immigration proceedings would have been dismissed. That would have been the end of the case. That's an option that the government had. The government had the option of going one way or the other. It chose to give up a present right that it had to allow the plaintiff to stay here in the country while those other proceedings went forward. The government here didn't have a present right at the time of the settlement to just keep the property or to simply destroy it. The government didn't give up any present right that it had here. It was a right that was being litigated in the court. It was an issue that was being litigated in the court. Had the government won, the government would have taken the property and destroyed it. Had the government lost, the government would have had to return the merchandise and it would have been allowed to have been imported for sale in the United States. What the government would not have received had it won, it would not have been allowed to require Kaseer to pay money for storage expenses. So not only did the government achieve its goal here, which was to stop this stuff from entering the United States, it achieved a result that it would not have obtained had it won a judgment on the merits. It could not have compelled Kaseer to pay for its storage expenses during the time. Well, you cite the Carbonell case, but it wasn't that the Federal Government said, yeah, we agree. They fought like heck to not pay fees in that case because they said, wait a minute, the immigrant didn't prevail on anything. We kept him from coming into this country. We may still deport him. And all we did was agree to this stipulation staying the deportation. How could this guy have prevailed? And the answer was, and Judge Reinhart wrote the opinion, there was a court stipulation that incorporated relief for that person. But the whole thing in that case was that the stipulation resulted in the government giving up a present right that it had to do something that it decided that it said we're not going to do this. And on top of that, that agreement resulted in a direct benefit to the plaintiff. To try and impose that on this case here, in most cases, in most forfeiture cases, the sole goal of the claimant is to get the property back because in most civil forfeiture cases, there's no international importation or exportation. The government seizes property, wants to forfeit it. The claimant wants to get it back. But this case is different. That can't be the goal of the claimant here because the reason the government seized this stuff is because the claimant was trying to import it into the United States to sell it here. And they did not do that. The government's goal in seizing it and filing it was to stop it from coming into the United States and being sold here. And that goal was achieved. And more than that goal was achieved in the end result. And that's what the district court concluded when it looked at it. Some of the other cases where fee awards have been granted, they follow that same line. They looked at two basic things. One, does a payment of a fee award or does an award of fees in this case serve the purposes of the statute under which the case was brought? And two, does it derive, does it deliver a direct benefit to the plaintiff? And does the defendant or the party against whom the fees are sought agree to do something they otherwise wouldn't be required to do? So you look at the case Fisher where the blind patron was denied entry into the restaurant. The case is settled by the restaurant agreeing to institute a formal policy saying that people with service dogs can be allowed into the restaurants, which arguably they were required to do that under the ADA anyway. But on top of that, they agreed we're going to post this written policy in a conspicuous place in our restaurant. We're going to make it an important part of our training when we get new employees. And the court said it didn't have to do any of those things. But it agreed to do those things as part of the settlement. Those were exactly the things that the plaintiff in that case wanted them to do, and therefore the plaintiff in that case was a prevailing party. In Barrios, the paraplegic coach who couldn't, who was finally allowed to, the agreement was that he would be allowed to coach on the field. Beyond that, not only did they allow him to coach on the field, which he arguably was allowed to do under the law, they agreed to pay him $10,000. But, Counsel, all these cases are cases where a plaintiff brings a lawsuit seeking some relief, gets a portion of the relief and prevails. When you're the defendant, you're not seeking the same kind of relief. You are defending against a charge brought by a plaintiff. And when you prevail by the plaintiff not getting what the lawsuit asked for, you have prevailed. And the lawsuit asked for forfeiture. It didn't ask for an ability to import to the United States or any kind of declaratory judgment about that. It asked for forfeiture and you didn't, and they got their property back so it was not forfeited. They prevailed. I think you're right if a case goes to judgment on the merits. I think if the government says we're going to try and forfeit this property and we lose a summary judgment motion or we lose a trial and we're required to give that property back and it's allowed to be imported, I think the court is right. That's clearly, they've substantially prevailed. The difference is, in all these cases that I'm talking about, is we're talking about a case where a judgment was entered based on a settlement agreement. And in that instance, you can't just look at whether the plaintiff or the defendant here, the claimant, got something back. The court's, the cases, none of the cases. I mean, if you get all of the property, you tried to forfeit in this case. I have trouble with the argument for that. I mean, if you filed a case and you got what you asked for, it wins. But if you file a case to forfeit and you don't get that and you give the property back, whatever restrictions, how can you prevail in a forfeiture case if you're a different case? The problem with that rule, Your Honor, is, well, number one, I think the reason is because, as I explained, the government got what it really was after here, and that is not to get the, not to allow the stuff to be imported. The government also extracted a payment that it otherwise would not have received. That makes the government a prevailing party. But beyond that, there's a pragmatic element here that comes up in the Barrios case. And that is, if the rule is going to be that when the government brings a forfeiture action, if the claimant gets anything back, then the claimant is a prevailing party within the meaning of Section 2466. Roberts, we didn't say anything. We said everything. There's a difference between anything and everything. And all you had to do in this one is put it in the settlement agreement. And I know you thought you did at one point. The – I suppose that's true, but that's an element of negotiation. That's something that we opted not to do. You have all the power. This stuff is drug paraphernalia. You know it. I know it. Even in Seattle, we know it. And so, you know, just take a hard line next time, and you won't have to deal with it. It's not going to stop settlements or, you know, interfere with commerce in any way. It's just a matter of negotiating tactics. You probably have negotiated this without a forfeiture suit. I don't believe that's true. You don't think when you had the paraphernalia, you said to them, look, we'll make a deal with you. Take your paraphernalia, get it out of here. Don't bring it in the country. And otherwise, we're going to forfeit it and destroy it? The reality, Your Honor, is that it's not that simple to resolve these cases with the importers when we believe that they're trying to import illegal merchandise. That's simply not – that's not the way it works. If we could simply – if we could simply – the idea that the government can simply say, we think your merchandise that you're trying to import is illegal, and we'd like you to send it back to where it came from and not bring it in here, that that would be the end of it, that's just simply not accurate. Okay. Well, if it's not, then I'm wrong about that. Would you like us to make a judicial finding that it's drug paraphernalia? Would that help? No. Well, I mean, the point I was going to make is that there's really nothing – there's nothing in the record on that issue. Right. No, we're just talking practically, because that was your argument, practically. Practically – what I'm saying is, practically speaking, a rule that requires the government to go forth to judgment on the merits makes it impossible to settle any of these cases. Well, there's no rule, really. And that's as far as attorney's fees, as Judge Rosnick said. You know, that's one of the subjects you can negotiate. You can negotiate everything else, but you didn't do that. And next time you've got this case, a case like this, I assume you'll put it in the settlement agreement. And so this isn't going to do any harm to anybody, except for whoever gets to pay for the attorney's fees. I don't – the problem is I don't think that a rule like that – I don't think a rule that says in a situation like this, just because the claimant gets the stuff – is allowed to export the stuff back out of the country, that that's enough to make it a prevailing party. That's inconsistent with all of the authority that's discussed in the briefs that talks about these other issues, about was the government required to do something that it otherwise would not have been required to do. And was there a direct benefit? Again, at some level, sure. If the claimant doesn't lose completely, they arguably derive some kind of direct benefit. But that's not the test in any of the cases that have been decided. The courts have looked for a genuine benefit of the government giving something up and the other party receiving something in response. And that just didn't happen here, particularly in light of their payment of $12,000 to the government for the privilege of being allowed to pay themselves to re-export this merchandise out of the country. I'd like to mention one last thing, and that is it's important that this was brought under a custom statute. The Civil Asset Reform Act of 2000, which reformed the entire civil forfeiture network, and it changed a lot of things. It changed the government's burden of proof. It made it impossible for the government to rely upon hearsay in proving its case in chief. An important element of that statute is something called the Customs Carve-Out. And that said, the Civil Asset Forfeiture Reform Act, the provisions, most of the provisions of that statute do not apply to civil forfeitures that are sought pursuant to Title 19. These classic customs, traditional in-red customs cases. That's what this is. This is a Title 19, 1545a case. And that's important. Congress felt that those were important enough to exclude from a lot of the provisions of CAFR, not the fee provision, but a lot of them. And again, going back to the whether this settlement served the purposes of the statute, the government contends that it did. And for that reason, the claimants were not substantially prevailing. Thank you. Ms. Owens, could you address that last point? You said you thought it was under the other statute. What about the fact that it's a customs rule that the government proceeded under rather than the traditional forfeiture law? Right. Well, there's, as Mr. Wall pointed out, there's no carve-out in CAFR under the attorney fee provision of CAFR. The government is correct. This merchandise was seized pursuant to 19 U.S.C. 1595 for alleged violation of 21 U.S.C. 863. 1595 is the general seizure and forfeiture statute. There's always a statute that follows that the alleged violation occurred under. And under, as I've already stated, 863, it was illegal to import or export. The government wants to make, focuses on the fact that Casir had to pay $12,000 to the government. First of all, that payment was for storage charges, so that went to a third-party storage facility. The government didn't get any of that money. That amount represented less than half of the storage charges. And frankly speaking, the only reason the storage charges were so high was because the government took almost three years to file a complaint in this case. Well, let me ask you this question. It looks like the court here applied the Second Circuit test. Do you think that was right or wrong that the court here applied that Second Circuit test? The court, the Second Circuit test. Well, it seems like there's a general test. First, I think it was in. Are you referring to the U.S. v. Davis case? Yes, yes. Right. Well, in that case, the Second Circuit said the court must identify the claimant's purpose for challenging the forfeiture. Right. Right. And here the purpose was to get their property back. Well, I want to just pause here because I'm having a little ‑‑ I want to make sure I understand this. That's a factual determination, isn't it, not a legal one? Well, the ‑‑ Yes? The court's ruling here was that the ‑‑ The court had to make a factual determination on what the purpose was. And the court did so here. And you told me at the beginning that this was reviewed for an abuse of discretion. So we would look, if this is correct, at whether or not the district court abused its discretion in making this factual determination that the purpose for Kassir was seeking to import the merchandise into the United States. That's the framework the district court used. And so you have to convince, and it's not hard convincing, I guess, all of us, convince us all, or most of us, that the district court erred in that factual determination. If the court feels that the decision was based upon a factual finding, then the review would be for clear error. And we would argue that there was clear error here because the terms of the settlement agreement were far more favorable to Kassir. Kassir got its property back. The government got nothing. The $12,000 that was paid went to a storage facility. Kagan. Well, it looks like the district court here first identified the purpose as seeking to import the merchandise, and then second, we know that Kassir failed to achieve this goal because it was forced to pay $12,000 and export the merchandise. It seemed like the court applied the legal framework. I can't figure out if you agree with that or not. And so it should be reversed only if it abused its discretion, and that is if the conclusion was illogical, implausible, or without support and inferences that can be drawn from the facts in the record. Well, I would disagree with the court's categorization of Kassir's purpose being to import the merchandise. That wasn't its main purpose. Okay. Well, but you disagree with the district court who found that. Yes, I do. Sorry. I thought that was clear. No, no. But you did stipulate that it was reasonably seized in the sense of the reasonable cause language was in the settlement agreement so that the government wanted to request that the court enter a certificate of reasonable cause. It could be also denied any allegations that this was actually drug paraphernalia. Right. But if we adopted a Second Circuit test that it was plausibly forfeitable, you did concede that by saying there was reasonable cause to seize it. I believe I briefly stated that we don't agree with that statement by the Second Circuit. Right. There was nothing to support that. So I wouldn't agree with that Second Circuit test. Sorry. I was not clear on that earlier as well. Just lastly, the government keeps saying it wasn't required to do something it otherwise wouldn't have had to do. It gave the property back. It wasn't required to do that. And, obviously, Kassir did receive a direct benefit because it got its property back. So we disagree with that argument. I believe I'm out of time. So thank you very much. Thank you. The case disargued will be submitted.
judges: Lasnik, Reinhardt, Murguia